IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
MAY 2000 SESSION

## STATE OF TENNESSEE v. BARRY WATERS ROGERS

**Direct Appeal from the Circuit Court for Giles County**
**No. 7677 Robert L. Jones, Judge**

---

**No. M1999-01358-CCA-R3-CD - Filed September 15, 2000**

---

The defendant, Barry Waters Rogers, was indicted for arson, conspiracy to commit arson, and vandalism. The jury acquitted the defendant on the charge of conspiracy to commit arson but, on the arson charge, returned a guilty verdict on the lesser included offense of facilitation of arson. Although the jury also returned a guilty verdict for facilitation of vandalism, the trial court later set that aside. The trial court imposed a Range I sentence of three and one-half years in the Department of Correction, with probation to be granted after the first year of service. In this appeal of right, the defendant challenges the sufficiency of the evidence and complains that he was improperly sentenced. We find no error and affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed.**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOE G. RILEY and NORMA MCGEE OGLE, JJ., joined.

Hershell D. Koger, Pulaski, Tennessee, for the appellant, Barry Waters Rogers.

Paul G. Summers, Attorney General & Reporter, David H. Findley, Assistant Attorney General, Mike Bottoms, District Attorney General, and Robert C. Sanders and Richard H. Dunavant, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

At approximately 8:30 P.M. on October 15, 1995, Corporal Randy King of the Pulaski Police Department discovered a fire in a dental office owned by Dr. Edward Sisk. He saw a truck parked approximately 15 feet from the building. After contacting the fire department, Corporal King identified the defendant[1] as the single occupant of the truck. He also noticed another individual who appeared to be hiding near the building. The individual fled the area on foot and got into a waiting car which sped away from the scene. Because the defendant had been drinking, he was placed under

---

[1]The defendant was tried separately from his co-defendants, Louisa Martin and Daryel Huey.

arrest for public intoxication.

About 10 minutes after the fire department arrived, Officer Melissa Thomas noticed what appeared to be a slight amount of gasoline in the bed of the defendant's truck. She swabbed the liquid with gauze so it could be analyzed.

Jerry Dickey, an arson investigator with the Department of Commerce and Insurance, was notified of the fire while he was at his residence in Columbia. When he arrived at the scene, Investigator Dickey found a melted plastic jug, a piece of cloth, some strips of masking tape, and a hatchet at the fire's point of origin. He also detected the odor of gasoline emanating from the plastic jug. Investigator Dickey, who was assisted by a trained canine, found the remains of some vinyl window blinds outside of the burned building. When he inspected the defendant's truck, Investigator Dickey discovered a plastic lid which smelled like gasoline and appeared to fit a plastic jug like the one found inside the burned dental office. He also found a partial roll of the same type of masking tape found inside the dental office. It was his opinion that the plastic jug, the towel, and gasoline had been fashioned into a Molotov cocktail and that the hatchet, which had been taped to the container, was used as a weight to break the window.

Officer John Dickey of the Pulaski Police Department interviewed the defendant immediately following his arrest. When first questioned, the defendant denied any knowledge of or involvement in the fire. When Officer Dickey found the black plastic container lid on the dashboard of the defendant's truck and learned of the tape and the melted container, he chose to interview the defendant a second time. In that interview, on the day following the fire, the defendant stated that he had met other individuals in a parking lot, purchased some gasoline, and set fire to the dental office. The defendant specifically identified Fred Simmons as one of the participants.

Later, when Officer Dickey could not locate anyone named Fred Simmons, he interviewed the defendant a third time. As he did so, Officer Dickey advised the defendant that he was aware that the defendant had been with Daryel Huey and Louisa Martin.[2] The defendant then acknowledged that the co-defendants, Martin and Huey, had been with the defendant drinking, talking, and driving on the day of the fire when Ms. Martin remarked that her dentist, Dr. Sisk, had refused to provide her with adequate pain medication for her teeth. The defendant stated that Huey wanted to retaliate in some way and that the three bought some gasoline and placed it in a plastic container. The defendant, accompanied by Huey, then drove his truck to Dr. Sisk's office. Ms. Martin followed in her car. The defendant stated that Huey used tape to attach the hatchet to the plastic container. The defendant contended that when he became aware of Huey's intent to burn the office building, he warned him not to do so and did not believe that he would actually follow through with the threat. He recalled that Huey, as he left the truck, directed the defendant to drive away. The defendant stated that he observed Huey walking towards the dental office and, moments later, saw flames. He remembered "seeing a car take off through the four-way stop . . . but couldn't tell if it was

_____

[2]Portions of the record refer to Ms. Martin as Louisa, Loulisa, or Lisa Martin. The record refers to both Daryel Huey and Daryel Hooie.

-2-

Louisa's."  By that time, he was being questioned by Corporal King.

Mark Bender, a criminal investigator with the Bureau of Alcohol, Tobacco & Firearms, assisted in the interrogation of the defendant.  Investigator Bender confirmed that the defendant swore to his second statement wherein he claimed that someone by the name of Fred Simmons committed the crime.

John McOwen, a forensic chemist, determined that the window blind found outside of the building contained gasoline, as did the remains of the towel and plastic container wrapped with masking tape.  He further determined that both the gauze used to collect the liquid found in the bed of the defendant's pickup truck and the black plastic lid found in the truck contained gasoline.

The defendant's mother, Josephine Rogers, testified for the state.  She stated that between two and three hours before the fire, she saw the defendant with Huey and Martin.  Ms. Rogers had returned from a walk and saw the defendant drive away from her residence.  She testified that she "almost went berserk because he had detached from them about six  months before that."  On cross-examination, Ms. Rogers explained that the defendant had broken off his relationship with the co-defendants, implying that they had been a bad influence.  The night of the fire, she said, was his first contact with them in months.

Dr. Edward Sisk did not know the defendant.  At trial, he testified that there had been approximately $40,000.00 in damage to his building and $120,000 in damage to the contents.  He testified that Ms. Martin had been a patient at one time and had asked for pain medication which he thought was not warranted.  Dr. Sisk testified that she was upset as a result of the conversation and that he had "let her go . . . as a patient."  He also recalled that Huey had called to complain about his failure to prescribe pain medication for Ms. Martin.  Dr. Sisk described Huey's demeanor as "less than desirable."  Dr. Sisk also recalled receiving a phone message from Carolyn Curry, Ms. Martin's mother, who said, "If you do not give Lisa six or eight Loratab 7.5, I'm going to call a lawyer."

The defendant testified on his own behalf.  He recalled that the co-defendants, Huey and Martin, had come by his residence at approximately 5:30 P.M. on the day of the fire and that he had gone for a drive with them.  They had been drinking both beer and whiskey before Martin complained about Dr. Sisk's failure to prescribe more pain medication for her teeth.  The defendant recalled that Martin, who had been having pain due to dental problems, remarked about Dr. Sisk, "I think they ought to suffer like we do."  Eventually, the three returned to the defendant's residence.  The defendant drove Huey to a convenience market.  Martin followed in her vehicle.  Huey returned with an antifreeze container and asked the defendant to drive down the alley behind Dr. Sisk's office.  The defendant claimed that he did not know what Huey had planned and that Huey told him to leave when he got out of the truck.  The defendant contended that neither Huey nor Martin had ever mentioned burning Dr. Sisk's office.

Forty-four years old and single, the defendant stated that he had never been married and had no children.  The defendant testified that he had no prior criminal record and had lived in Giles

County his entire life except for five years he spent in Knoxville working at the University of Tennessee in preventive maintenance. At the time of the fire, the defendant had been employed for over five years as a forklift operator at the Sun Drop Bottling Company. Prior to that, he had worked at a furniture store for 12 years.

The defendant conceded that the rag, the tape, and the hatchet used to make the Molotov cocktail were already in his truck. He claimed that while he knew that Huey planned to do something, he did not know specifically what it was.

Initially, the defendant claims that the evidence, which was entirely circumstantial from his perspective, was insufficient to support the conviction. He maintains that the state failed to prove that he was aware that his co-defendants intended to commit the crime of arson and that he had knowingly furnished substantial assistance.

Tenn. Code Ann. § 39-11-403 defines facilitation of a felony as follows:

> **Criminal responsibility for facilitation of felony.**–(a) A person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony.
> (b) The facilitation of the commission of a felony is an offense of the class next below the felony facilitated by the person so charged.

Arson of any structure other than a place of worship is a Class C felony. Tenn. Code Ann. § 39-14-301(b)(1).

Whether the evidence is direct or circumstantial, or a combination of both, the same rules apply. State v. Matthews, 805 S.W.2d 776 (Tenn. Crim. App. 1990). A criminal offense may be established exclusively by circumstantial evidence. Duchac v. State, 505 S.W.2d 237, 241 (Tenn. 1973). A guilty verdict, approved by the trial judge, accredits the testimony of the witnesses for the state and resolves all conflicts in the proof in favor of the state's theory. State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978). On appeal, the state is entitled to the strongest legitimate view of the evidence, and all reasonable inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). A verdict against the defendant removes the presumption of innocence and raises a presumption of guilt upon appeal. State v. Grace, 493 S.W.2d 474 (Tenn. 1973). Findings of guilt in criminal actions will not be set aside unless the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307 (1979).

The proof established that the defendant was present while Huey, having expressed an intent to retaliate against Dr. Sisk, concocted a Molotov cocktail. The defendant transported Huey to a

convenience market, where he purchased the gasoline and placed it in a plastic container. The tape and hatchet, which were necessary to construct the Molotov cocktail, came from the defendant's truck. The defendant drove Huey to the dental office and was parked only a few feet away when flames could be seen coming from the building. The statement that the defendant made to police conflicted with his claim at trial that he was unaware that Huey intended to burn the building. In our view, a rational trier of fact could have found the essential elements of facilitation of arson. That is, a rational trier of fact could have found that the defendant was aware that Huey intended to commit arson and the defendant knowingly furnished substantial assistance in the crime.

Next, the defendant complains that the three- and-one-half-year sentence is excessive, based upon the applicable range of between two and four years, and that he was entitled to an alternative sentence. He specifically submits that the state failed to overcome his presumptive favorability and that the trial court should have granted immediate probation rather than ordering a sentence of split confinement.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987). The record in this case demonstrates that the trial court made adequate findings of fact.

In calculating the sentence for a Class B, C, D, or E felony conviction, the presumptive sentence is the minimum in the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). If there are enhancement but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn. Code Ann. § 40-35-210(e). The sentence must then be reduced within the range by any weight assigned to the mitigating factors present. Id.

In determining the length of the sentence, the trial court found three applicable enhancement

factors as set out in Tenn. Code Ann. § 40-35-114:

> (6)     That the amount of damage to property was particularly great;
>
> (9)     That the defendant possessed an explosive device in the commission of the offense; and
>
> (10)    That the defendant had no hesitation about committing the crime when the risk to human life was high.

The trial court pointed out the magnitude of the financial loss incurred by Dr. Sisk, emphasized that the Molotov cocktail was constructed in the defendant's truck, and noted that the dental office was located in a row of buildings that shared adjacent walls and was near several private residences, which were at risk if the fire had spread.

The trial court also determined that there were three applicable factors in mitigation as set out in Tenn. Code Ann. § 40-35-113:

> (9)     The defendant assisted the authorities in uncovering offenses committed by other persons or in detecting or apprehending other persons who had committed the offenses;
>
> (10)    The defendant assisted the authorities in locating or recovering any property or person involved in the crime; and
>
> (13)    The defendant had no prior criminal record.

Because the trial court assigned little weight to (9) and (10) of the mitigating factors, it determined that the enhancement factors outweighed the factors in mitigation and that the defendant merited "a sentence toward the high end of the range." In imposing sentence, the trial court also observed that the defendant had not held regular employment for more than a year and had not been employed at all for a period of eight months between trial and the imposition of sentence. The trial court placed special emphasis on the seriousness of the offense and concluded that the length and the manner of the term was consistent with the principles of the sentencing legislation.

At the time of the sentencing hearing, the defendant was hopeful that he would receive a full-time job at Richland Steel. He agreed to serve as a witness for the state in the trial of Huey and expressed remorse for the damage and suffering caused Dr. Sisk. The defendant argues that the trial court misapplied enhancement factor (6), that the amount of damage to property was particularly great; misapplied factor (9) because an explosive device was inherent in the offense of arson; and misapplied enhancement factor (10), a considerable risk to property and human life, because the fire did not spread and no one's life was threatened. The defendant also argues that several additional mitigating factors should apply, citing in particular Tenn. Code Ann. § 39-15-113(1), (2), (3), (4),

-6-

(11), and (12), as well as several other circumstances which would fall within the general category authorized in factor (13).

The defendant also complains that the trial court denied probation because of the seriousness of the offense and the necessity to prevent crime and promote respect for the law. He points out that there was no evidence of deterrence and argues that he should have been granted immediate probation.

In our view, the trial court correctly applied each enhancement factor. None were elements of the crime. The damage to property was particularly great. There was risk of damage to the adjoining property and, possibly, nearby residences. In classifying the damage as particularly great, the trial court merely mentioned that if arson was graded by the level of loss, as are other property crimes, the conviction here, a Class D felony, would have qualified as a Class B felony. There was nothing improper about that. Possession of an explosive was not an element of the crime of facilitation of arson and, thus, was properly applied as an enhancement factor. Factor (10) may be applied when persons other than the victim are nearby and might be subjected to injury. State v. Sims, 909 S.W.2d 46 (Tenn. Crim. App. 1995). This court has specifically found factor (10) applicable in arson cases because of the danger to fire fighters, law enforcement officers, and others at the scene. See State v. Aaron Eckard, No. 01C01-9610-CC-00429 (Tenn. Crim. App., at Nashville, Dec. 12, 1997); State v. Ronald D. Blair, No. 01C01-9406-CR-00191 (Tenn. Crim. App., at Nashville, Dec. 22, 1994).

In our view, the trial court also properly rejected Tenn. Code Ann. § 40-35-113(1), that the defendant's conduct neither caused nor threatened serious bodily injury. The defendant's claims that mitigating factors (2), (3), (4), (11), and (12) apply is based upon his contention that he was intoxicated and merely acquiescing to the desires of his friends. There was, however, simply no proof that the defendant acted under strong provocation, that grounds existed tending to excuse his conduct, or that his role, although perhaps less culpable than Huey's, was minor. The circumstances of the offense were not so unusual as to preclude a sustained intent on the part of the defendant to violate the law; in fact, the necessary preparations for the crime required some amount of time. The defendant had ample opportunity to reconsider his participation. Furthermore, there was no proof that the defendant merely acted under duress or under the domination of Huey or Martin.

Finally, while acceptance of responsibility and the expression of remorse may be a solid basis for a successful rehabilitation, there is no requirement that either be included among the mitigating factors set out in the catchall provision of Tenn. Code Ann. § 40-35-113(13). The claim that the defendant's work history should be a mitigating consideration is also in question. While the trial court has the discretion to consider a solid work history as a mitigating circumstance, it is not required to do so, especially, as in this case, where the defendant has not worked for over a year since committing the crime. The trial court, in our assessment, acted within its authority in imposing a three-year, six-month sentence when the maximum possible was four years.

It is our view that the trial court also acted within its authority in denying immediate

-7-

probation. While granting a probationary sentence after the service of one year, the trial court deemed immediate probation as inappropriate due to the seriousness of the criminal act. There was substantial damage to the dental office and a grant of immediate probation might have depreciated the egregiousness of the defendant's level of participation. By finding the defendant guilty of facilitation of arson rather than arson, the jury afforded some degree of leniency. It was, therefore, appropriate to deny immediate probation due to the nature and circumstances of the crime.

Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE